2457

Michael W. SLEAR and Elizabeth A. Slear, Respondents v. Jethro HANNA and Watson's Riverside, Inc., of whom Jethro Hanna is, Appellant.

(467 S.E. (2d) 761)

Court of Appeals

*Charles V. Leonard* and *Willard D. Hanna, Jr.*, both of *Harris & Hanna*, of Myrtle Beach, *for appellant.*

*Henrietta U. Golding*, of *Bellamy, Rutenburg, Copeland, Epps, Gravely & Bowers*, of Myrtle Beach, *for respondents.*

Heard Dec. 6, 1995.

Decided Feb. 5, 1996; Reh. Den. Mar. 21, 1996.

CURETON, Judge:

This is an action to determine the rights of the respondents, Michael W. Slear and Elizabeth A. Slear (Slears), to use Ester Landing in Watson's Riverside Development as an access point to the Intercoastal Waterway. The referee held the developer, Watson's Riverside, Inc., privately dedicated Ester Landing to all property owners in Watson's Riverside Development, which included the Slears. The referee also held the developer gave a private easement to the landing to all property owners of the development and the Slears, as residents of Watson's Riverside Development, have the right to utilize the landing as beneficiaries of that easement. Appellant, Jethro Hanna, another property owner, appeals. We reverse.[1]

*Background*

In January, 1996, J. Watson Smith, President of Watson's Riverside, Inc., executed a deed conveying Lot 1-A, Block B, of Watson's Riverside Development to Jethro Hanna. Hanna's deed referenced a plat recorded in Plat Book 59 at Page 86 in the Horry County Clerk of Court's Office (i.e. the Cox plat). Lot 1-A is shown on that plat as being adjacent to Oak Street which was then unopened. Across Oak Street and immediately to the west is Lot 1, Block A as shown on said plat. The deed from Watson's Riverside, Inc. to Hanna contains the following language:

> The grantor hereby covenants and warrants that the undeveloped property across the street as shown on the above referred to plat is restricted to residential purposes; that the road [Oak Street] dividing Lot and Lot 1-A as shown on said plat is not to be used as a public landing but is to be used only by residents of Watson's Riverside Development and that said road and landing will be maintained and kept in a neat, clean and attractive manner.
>
> The grantor hereby agrees for the consideration stated above to have the undeveloped road between Lot 1 and Lot 1-A and known as Ester Landing as shown on said plat, paved, said road to be properly ditched, smoothed out

---

[1] Watson's Riverside, Inc. did not participate in the trial of the case and advised the referee it would abide by any order issued. Watson's Riverside, Inc. has taken no position in the appeal.

and paved where present ditch now [sic] situate; Grantor agrees to provide and fence the boundary adjoining the grantee's land with a stout chain link fence; Grantor to maintain fence, however, Grantor reserves a right-of-way down the property line between the said road and grantee's lot herein described; Grantee to have the use and benefits of said fence. It is the further understanding that a locked gate is to be placed at the entrance of said landing and keys to be provided only to residing land owners; said covenants, warranties and promises to run with the land and to bind the parties [sic] heirs, successors, assigns, administrators or executors as the case may be.

At the hearing, Hanna testified he was concerned when he purchased his lot about the future use of the landing located next door. As a result, he negotiated with J. Watson Smith to restrict access to Ester Landing to only those owners of lots identified on the Cox plat referred to above, which agreement was memorialized in his deed. The Cox plat shows the initial phase of Watson's Riverside Development and does not include the Slears' property.

The Slears purchased their property in December, 1979. Their deed conveyed Lot #3 of Block M of Watson's Riverside Addition, Phase III, as shown on a map recorded in the Clerk of Court's Office in Plat Book 64 at Page 70. Mr. Slear testified he received keys to the lock on the gate at Ester Landing from representatives of Watson's Riverside, Inc. and used the landing for a number of years. Nothing in his deed refers to the right to use the landing. Two other property owners, Donald Beaty and Theodore Twigg, testified they purchased property in Watson's Riverside Development and also received keys to the gate to the Landing. In 1988 a civil action was brought by Hanna against Watson's Riverside, Inc. whereby Hanna sought an injunction against Watson's Riverside, Inc. preventing landowners other than those shown on the Cox plat from using the Landing. An order was issued in February of 1990 granting summary judgment to Hanna. The order stated:

[T]he Defendant, Watson's Riverside, Inc., its successors and assigns, be and are hereby enjoined and restrained from allowing anyone other that resident landowners as shown on Plat Book 59, page 86 [Cox plat] from using the

fifty foot (50') by two hundred foot (200') tract of land, commonly known as Ester Landing, and the defendant, its successors and assigns, are further restrained from allowing any persons or entities, including those residing landowners shown on said plat, from using said landing for any purpose other than the launching and retrieving of boats only, . . . .

Watson's Riverside, Inc. took no appeal from that order.

In his order in this case, the referee details the growth of Watson's Riverside Development. In July 1974, Watson's Riverside, Inc. purchased substantial acreage in Horry County and began developing a residential area known as Watson's Riverside Development. The Cox plat referred to above shows the initial phase of the development. Subsequent to the recording of the Cox plat, additional phases were developed and plats were recorded. There is no plat showing the entire development, nor does reference to the Cox plat give any hint that future phases of the development were contemplated. The referee found all the lots in all of the phases of Watson's Riverside Development are subject to identical restrictive covenants contained in declarations of restrictions filed each time an addition to the development was opened. The referee concluded Watson's Riverside Development consists of lot owners in all of the phases of the development in that these lot owners have a common grantor, identical restrictions, and are part of the same scheme of development as evidenced by the consecutive block lettering. The referee held Watson's Riverside, Inc. intended to dedicate Ester Landing to all of the property owners in Watson's Riverside Development and this dedication was not restricted to only those owners shown on the Cox plat. Additionally, the referee held the 1990 order was not a bar to this action because the Slears were not parties to that action and no party to that action had the same interest as the Slears.

## Discussion

### I.

Hanna first argues the referee erred in failing to find the 1990 order conclusive on the Slears' claim of a right to use Ester Landing. Essentially, Hanna is arguing for

the application of defensive nonmutual collateral estoppel. Nonmutual collateral estoppel may be asserted to prevent the relitigation of an issue litigated in a former action, unless the party sought to be precluded was not afforded a fair and full opportunity to litigate the issue in the first action or other circumstances justify affording him the opportunity to relitigate the issue. *South Carolina Property and Cas. Guar. Ass'n v. Wal-Mart Stores, Inc.*, 304 S.C. 210, 403 S.E. (2d) 625 (1991). The Slears were not parties to Hanna's 1990 action against Watson's Riverside, Inc. and there is no indication Watson's Riverside fairly represented their interests.[2] Additionally, there is no basis to conclude the Slears were in privity with Watson Riverside, Inc. such that the Slears should be precluded from litigating their claim in the current action. *Roberts v. Recovery Bureau Inc.*, 316 S.C. 492, 450 S.E. (2d) 616 (Ct. App. 1994); *Richburg v. Baughman*, 290 S.C. 431, 351 S.E. (2d) 164 (1986). Because neither the Slears not anyone in privity with them has been afforded a fair and full opportunity to litigate the Slears' right to use the landing, *Graham v. State Farm Fire and Cas. Ins. Co.*, 277 S.C. 389, 391, 287 S.E. (2d) 495, 496 (1982), application of collateral estoppel is inappropriate.

## II.

Hanna also contends the referee erred in finding Watson's Riverside, Inc. dedicated Ester Landing to the use of all residents of the development as opposed to just those residents shown on the Cox plat. Hanna argues the theory of private dedication was not alleged in the Slears' complaint and the referee erred in permitting the Slears to amend their pleadings to conform to the proof. We find merit to this argument. The attorney for the Slears conceded at oral argument that her motion to amend the pleadings encompassed only the issue of public dedication. The referee made

---

[2] The 1990 order grants to Hanna an injunction by way of summary judgment based on Hanna's cursory affidavit to the effect that "there have been several attempts by non-resident owners outside the properties disclosed in Plat Book 59 on page 86 who have attempted to use the landing and have keys to the gate." Hanna's complaint prayed for and the 1990 order enjoined Watson's Riverside, Inc. "from allowing anyone other than resident landowners as shown on Plat Book 59, page 86" from using the landing.

no ruling on the basis of a public dedication and there was neither a Rule 59(e) motion made to address the theory of a public dedication, nor has there been an appeal of the court's refusal to address the issue. In any event, the language in Hanna's deed is inconsistent with an intent to dedicate the landing to public use. The deed states that Oak Street which leads to the landing "is not to be used as a public landing. . . ."[3]

Hanna also argues that the decision of the referee to ▪ afford the Slears a right to use the landing based on a private dedication is also erroneous because that theory was never presented to the referee. We agree. A review of the Slears' complaint shows they bottomed their right to use the landing on the covenants contained in Hanna's deed and representations made to them by the developer at the time they purchased their lot to the effect that "they had full access to the Intercoastal Waterway through the landing. . . ." Nevertheless, the Slears argue the term "representations" contained in their complaint encompasses both verbal representations and representations by all documents of record, to include plats and restrictions.

As to the Slears' claim they have a right to use the ▪ landing by virtue of the language of Hanna's deed, we hold the referee was in error in his interpretation of the deed. We conclude the language in the deed "residents of Watson's Riverside Development" when considered in conjunction with the provision that a locked gate would be installed and "keys [to the gate would] be provided only to residing land owners . . ." is ambiguous in light of the ultimate development of the area. Therefore, resort must be had to the intention of the parties to Hanna's deed. The only party to the 1976 deed to testify was Hanna. He stated that, consistent with the holding of the 1990 order, the parties intended the landing to be used only by residents (lot owners) of Watson's Riverside Development as shown on the Cox Plat. The Slears argue this could not have been the intention of the developer because at the time of the execution of Hanna's deed, it was evident to both Hanna and the developer that Watson's River-

---

[3] Throughout this and the former proceeding the parties appear to not have appreciated a difference between the block of Oak Street leading up to Ester Landing and Ester Landing proper.

side Development encompassed an area much larger than that shown on the Cox Plat. We disagree. The law imputes to a purchaser notice of recitals in all properly recorded instruments forming a link in his chain of title. *Fuller-Ahrens v. South Carolina Department of Highways and Pub. Transp.*, 311 S.C. 177, 427 S.E. (2d) 920 (Ct. App. 1993). As we view Hanna's chain of title, to include all plats of record depicting Watson's Riverside Development in 1976, there is no hint the development then encompassed or would in the future encompass the area where the Slears ultimately purchased their lot. The main object in construing a deed is to ascertain the intention of the grantor from language contained in the deed. *Lake View Acres Development Co. v. Tindal*, 306 S.C. 477, 412 S.E. (2d) 457 (Ct. App. 1991). We agree with Hanna that the proper interpretation of his deed leads to the conclusion that the restriction or reservation as to the use of the landing inures to the benefit of those lot owners or future owners of lots shown on plats of record in 1976 at the time the deed was executed. Because the Slears' lot was not included on the plats, they obtained no interest in the landing by virtue of Hanna's deed.

## III.

The Slears also alleged in their complaint that, because of certain representations made by the developer and Hanna, they should be estopped to deny the Slears "full access to Ester Landing." While the referee did not base his decision on estoppel, he did place emphasis on the fact that "statements [were made] to property owners" and the "distribution of keys to property owners constituted conduct indicating an intention to create a right in [all] property owners of Watson's Riverside Development to use Ester's Landing." Our review of the record indicates that neither the Slears not the two other lot owners who testified on their behalf were able to identify any representations made to them regarding the use of the landing prior to the purchase of their lots. Although Mr. Beaty testified that after he purchased his lot, he talked to Mr. Smith and was told that "[they were] putting in a boat ramp and it was for Watson's Riverside, for all of us to use," the Slears and Mr. Twigg, the other property owner, could not testify to any conversations they had with the developer or the Hannas concerning who would be permitted to use

the landing. The Slears, Beaty and Twigg testified that, at their request, they received keys from the developer's representatives or from the Hannas and that in 1987 the Hannas issued new keys. We conclude that the Slears' and other lot owners' description of the developer's and the Hannas' grant to them of a right to use the landing together with their actual use thereof, were more in the nature of a license than an easement. *See Hilton Head Air Service, Inc. v. Beaufort County,* 308 S.C. 450, 418 S.E. (2d) 849 (Ct. App. 1992). We therefore conclude the elements of estoppel have not been proven. *Frady v. Smith,* 247 S.C. 353, 147 S.E. (2d) 412 (1966).

IV.

Finally, the Slears claim the referee's decision should be sustained because Hanna does not contest the referee's findings regarding the common scheme of development of Watson's Riverside Development and, further, the evidence sustains the referee's conclusion that because the Slears bought their property on a street that links up to Oak Street which leads to the landing, the recordation of the several plats depicting such streets affords them a right of access to the landing. In other words, they argue an appurtenant easement by implication. *See Newington Plantation Estates Assoc. v. Newington Plantation Estates,* 318 S.C. 362, 458 S.E. (2d) 36 (1995) (absent evidence of the seller's intent to the contrary, a conveyance of land that references a map depicting streets conveys to the purchaser, as a matter of law, a private easement by implication with respect to those streets, whether or not there is a dedication to public use)[4]; *Carolina Land Co., Inc. v. Bland,* 265 S.C. 98, 217 S.E. (2d) 16 (1975) (where a deed describes land as bounded by a street that extends beyond land conveyed, grantee acquires a right to use the street not only in front of his property, but also to the full extent of the street as indicated on the plat). We hold that the theory of an appurtenant easement by implication, even if that theory were before the referee, has not been shown as to

---

[4.] Hanna has also argued the Slears waived their right to use Ester Landing when they purchased their property with actual and constructive notice that the landing's use was restricted. The referee's order does not address this issue and, therefore, it is not preserved for appeal. *Smith v. Phillips,* —S.C. —, 458 S.E. (2d) 427 (1995).

the landing itself, as opposed to Oak Street leading up to the landing. *Cf. Owens v. Cantrell*, 219 S.C. 433, 65 S.E. (2d) 773 (1951). The Slears and the two other landowners who testified on their behalf agree the landing is enclosed by a locked gate. There is not indication Oak Street ever extended beyond the locked gate. The Slears' receipt of permission to use the landing was both casual and restricted by the issuance of keys to them. In fact, Mr. Slear testified no one indicated to him prior to the time he purchased his lot that he had a right to use the landing. Several years later, he obtained a boat and secured a key to use the landing. This grant of right to use the landing in no way qualifies as an appurtenant easement in that there has been no showing that the right to use the landing "inheres in" or is "essentially necessary" to the enjoyment of the Slears' property. *Carolina Land Co.*, 265 S.C. 98, 106, 217 S.E. (2d) 16, 20 (1975) (an appurtenant easement inheres in the land to which it is appurtenant, is essentially necessary to its enjoyment and passes with the dominant estate).

Accordingly, the order of the referee is reversed.

Reversed.